**MARTIN v. CHAPMAN et al.**
**Patent Appeal No. 3478.**

Court of Customs and Patent Appeals.
June 12, 1934.

Hoguet & Neary, of New York City (Charles Neave, John F. Neary, and George H. Corey, all of New York City, of counsel), for appellant.

Henry D. Williams, of New York City (Howard M. Morse and Giles S. Rich, both of New York City, of counsel), for appellees.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The invention in this interference proceeding relates to a process of concentrating phosphate ore which separates the mineral particles from the gangue (sand) with which it is found associated.

The interference involves three counts from the Martin application which were copied into the application of Chapman and Littleford. Count 1 has been regarded by the tribunals below as illustrative, and follows: "1. The process of concentrating phosphate ore which comprises adjusting the water content of the finely-divided ore to insure having all the particles thoroughly wetted and adding a selective flocculating agent to the ore, mixing said agent with the ore until loosely bonded agglomerates of phosphate mineral particles are formed which are adapted, when a mixture of said agglomerates and the gangue particles contained in the ore is agitated under wet stratifying conditions, to settle at a less rate than the gangue, then subjecting the mixture to agitative wet stratifying classification according to the relative settling values of said agglomerates and the gangue and gathering the phosphate mineral in an overlying stratum."

The sole question in this case is the right of the appellees to make the counts.

It is pointed out by the appellees that this question has been ruled on four times in the United States Patent Office, and that each ruling was to the effect that the appellees could make the counts. The first ruling referred to was by the Primary Examiner who suggested and started the interference; the second was the denial by the Examiner of Interferences of Martin's motion to dissolve; the third was the holding of the Examiner of Interferences in his decision on priority after considering the testimony of both parties; and the fourth was by the Board of Appeals in its decision affirming the action of the Ex-

aminer of Interferences. It is from the decision of the Board of Appeals, holding that appellees could make the counts, and affirming the action of the Examiner of Interferences in awarding priority of invention of the counts to appellees, that appeal has been taken to this court.

It is urged here, in substance, by appellant, that his invention relates to the process of concentrating phosphate ore according to the principle of operation known as wet stratifying classification or wet stratification. He bases his argument here almost exclusively upon the proposition that his invention related to concentration by wet stratification methods on the one hand, while the appellees' invention relates to ore concentration by the flotation method; that the flotation method follows the idea of imparting buoyance to the mineral particles, or flocks made up of a plurality of mineral particles, so that they are caused either to rise up to or through the surface of the water or to ride upon the surface of the water or to remain suspended in the water while permitting heavier gangue particles to sink. It is contended that it should be held that the appellees in their application did not disclose the invention of the counts of the interference "in such full, clear, concise and exact terms as to enable any person skilled in the art to practice the invention" as required by statute, and that, therefore, the counts do not read on their disclosure. Appellant points out that the appellees in their original specification and claims describe the invention claimed as a process of skin or film flotation, which involves a floating of the mineral particles. Appellant contends that the Board has erred in holding that the appellees, in addition to the flotation process, have also disclosed the process of the invention called for in the counts.

We have carefully considered the entire record and the arguments of the parties. It seems to us that the Patent Office tribunals reached the right conclusion.

Appellant has emphasized here, and in the Patent Office, that his application is not concerned with the flotation of particles, and that his teaching involves the using of less water than that disclosed in appellees' application.

It is true that appellees' application states: "According to the present invention the concentration is effected by the procedures of skin or film flotation in which phosphate particles ride upon the surface of water while silica and other impurities are wetted by the water and tend to sink."

However, in addition to the above, and in the same paragraph where the above is found, is also found the following statement: "* * * The process may be carried on or aided by table concentration wherein the silica, which tends to sink in the water flowing over the table, is carried off in the general direction of the riffles, while the phosphate particles, carried in or on the water flowing across the riffles on the table, are delivered to a concentrate launder, and are thereafter dewatered."

Also, as the Board pointed out, Chapman and Littleford state: "Many phosphate particles float on the water surface as a skin or film float and are carried off into the concentrates launder 11 by the transversely flowing stream of water. Other phosphate particles, many of them in flocks associated with air bubbles, forming aggregates relatively lighter than the silica and other impurities but usually heavier than the water, remain in suspension in the water or rest lightly on the table and are carried transversely, separating themselves from the endwise movement of the other particles by the usual action of a table on particles of differing gravities."

The Board of Appeals, substantially expressing the same views as those expressed by the Examiner of Interferences, stated: "Martin urges that even if it be admitted that Chapman and Littleford refer in their application to a process of separation other than skin flotation, yet they at no time presented claims to the process represented in the counts before the counts of interference were suggested from the Martin application. We think this statement is fallacious in view of what we have already said as to claim 2 in the Chapman and Littleford application and for the further reason that the counts are broad enough in terms to cover a process wherein part of the process only includes the suspension method of separation. Martin also urges that Chapman and Littleford do not teach the procedure whereby a concentration which is not film flotation may be accomplished or in other words, wherein the mineral particles are carried off the table in suspension in water or while resting lightly on the table. Practically all that Martin teaches, at least in the portion of the specification which was submitted in connection with this interference, is that the water content be sufficient to thoroughly wet the surfaces of all the ore particles. Chapman and Littleford teach the formation of a thick pulp which would indicate a wetting substantially to the degree taught by Martin who also refers to the formation of a pulp in the water. If any other specific details of the process are necessary to carry out this suspension method, Martin in his abbreviated specification does not teach essentially more than Chapman and Littleford. We think, therefore, that Martin's argument in this connection is not well founded."

The Board quoted most of what we have above quoted from the Chapman and Littleford application. It held in substance that, irrespective of their mention of the skin or film flotation method, they pointed out in the method which they employed that a portion at least of the minerals tends to sink in the water and are carried off in the general direction of the riffles and that these phosphate particles are "carried in or on the water flowing across the riffles on the table."

We think the Chapman and Littleford application discloses the broad subject-matter of the counts involved. It will be noticed that the count may be divided into a preamble and five steps as follows:

"(Preamble) The process of concentrating phosphate ore which comprises

"(Clause 1) adjusting the water content of the finely divided ore to insure having all the particles thoroughly wetted and

"(Clause 2) adding a selective flocculating agent to the ore,

"(Clause 3) mixing said agent with the ore until loosely-bonded agglomerates of phosphate mineral particles are formed which are adapted, when a mixture of said agglomerates and the gangue particles contained in the ore is agitated under wet stratifying conditions, to settle at a less rate than the gangue,

"(Clause 4) then subjecting the mixture to agitative wet stratifying classification according to the relative settling values of said agglomerates and the gangue and

"(Clause 5) gathering the phosphate mineral in an overlying stratum."

The appellant calls the bonded particles of the minerals "agglomerates," while the appellees speak of them as "aggregates." There seems to be no controversy but that clause 1 of the count is shown in both applications, since both parties mix water with the finely divided ore in such a way as to thoroughly wet the particles. Both parties add substantially the same flocculating agent to the ore. No particular flocculating agent is provided for in the count, but Martin's specification mentions soap, sodium silicate, or crude petroleum. Chapman and Littleford make a thick pulp which is treated with caustic soda.

in solution and oleic acid and fuel oil, forming soap. The amounts of the components of the flocculating agents are substantially the same in each application.

Most of appellant's contentions are concerned with clause 3: " * * * Mixing said agent with the ore until loosely bonded agglomerates of phosphate mineral particles are formed which are adapted, when a mixture of said agglomerates and the gangue particles contained in the ore is agitated under wet stratifying conditions, *to settle at a less rate than the gangue,* * * *" (Italics ours.)

As is pointed out above, both parties teach this step of the count. Both use the same Wilfley concentrating table, the operation of which performs the steps in clauses 4 and 5. This is described in both applications, and appellees' witness Drumgold, who testified regarding Chapman's and Littleford's actual reduction to practice, said: " * * * As the pulp flowed over the table, the agglomerates or globules of phosphate showed rolling along under the surface and over the side. Also a few agglomerates were floating on the surface, and the agglomerates which were under the surface, a portion of them came to the top as they rolled off into the concentrate launder, and the sands or tailings followed along between the riffles and fell off at the tailings end of the table into the tailings launder. My observation was that the quantity of agglomerates under the surface and on the sand was greater than the quantity on the surface."

As we understand the argument of appellant, he seeks to have read into his claims limitations not found therein but which he contends he has emphasized in his specification. It is well understood in patent law that applicants for patents may not have read into their claims limitations not expressed although emphasized in their application. Sweetland v. Cole, 53 F.(2d) 709, 19 C. C. P. A. (Patents) 751; Woelm v. Hasselquist, 62 F.(2d) 367, 20 C. C. P. A. (Patents) 806.

Appellant in this court stresses the proposition that the two inventions are not the same and argues in effect that since his invention involved the stratifying classification method, this was not the method taught by appellees, and argues that the claims contain limitations which when construed in accordance with the teachings of appellant renders appellees' disclosure insufficient to make the counts, and relies as authority in part on this

court's decisions in Minton v. Thomas, 48 F.(2d) 425, 427, 18 C. C. P. A. (Patents) 1153; Doherty v. Dubbs, 65 F.(2d) 151, 20 C. C. P. A. (Patents) 1103; and Arnold v. Greene, 54 F.(2d) 948, 950, 19 C. C. P. A. (Patents) 886. In these cases it was held that one of the parties in each interference could not make the counts for the reason that the inventions were different. The principle announced in these decisions is expressed in Minton v. Thomas, supra, by the following expression used by this court in that opinion: "We agree with the Board of Appeals that, if there is any such band of intermediate frequencies which will pass through the filters of both circuits in the appellants' device, it will be an effect not contemplated by them when they filed their original application herein. No one can read their specification as first filed and consider their original claims, without being led to the conclusion that such an overlapping and intermediate band of frequencies was the one thing which they were trying to prevent by their apparatus. * * * "

And with the following expression in Arnold v. Greene, supra: "Admittedly, Greene teaches a method of starting the melt with a high voltage, and, if it could be said that he also taught a method of starting with a low voltage, then, in the same application, he would be teaching the doing of the opposite thing. If Arnold disclosed a patentable discovery, it must necessarily rest in the particular order of applying the voltages. Another disclosure by another inventor which teaches that one may select any voltage for any step in the melt, or which teaches the opposite order of applying voltage, can hardly be said to disclose the same invention."

In those cases the decisions rested upon the proposition that one of the parties could not make the count for the reason that he taught the opposite of what the other taught, or taught the undesirability of obtaining the result obtained by the other. This is not the situation in the case at bar. It has been hereinbefore pointed out that in the particulars outlined in the counts at bar they both teach the same invention.

We do not find it necessary to discuss any of the other arguments presented in appellant's brief. We find no error in the decision of the Board of Appeals, and the same is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.